In re CAR LEASING OF AMERICA, Inc.

QUITTNER v. TAYLOR et al.

No. 53983.

United States District Court
S. D. California, C. D.

Jan. 26, 1953.

Gendel & Raskoff, Los Angeles, Cal., for Frances F. Quittner, Trustee, respondent on review.

John W. Preston and Millsap & Schaumer, Los Angeles, Cal., for respondents and petitioners on review.

YANKWICH, Chief Judge.

The petition of Taylor Manufacturing Company, a corporation, and Ellis R. Taylor, filed November 14, 1952, to review the Order of the Referee on turn-over proceedings, dated November 7, 1952, heretofore heard, argued and submitted, is hereby decided as follows:

The Order of the Referee is modified by excluding from the Order the items denominated (3) in the Schedule set forth below. The findings as to Items (3) are disapproved as unsupported by the evidence. The turn-over Order is affirmed as to Items (1), (2) and (4) in the total amount of $7631.70. The findings of the Referee as to such three items are affirmed.

As so modified, the Order is affirmed.

Counsel for the Trustee will prepare formal order in accordance with Local Rule 7.

### Comment

On October 7, 1952, the Referee in Bankruptcy, after a hearing on a petition for a turn-over, filed by the receiver of the bankrupt, made an order directing Ellis R. Taylor and Taylor Manufacturing Company, a corporation, to surrender and deliver to the Trustee herein the following property, proceeds and moneys. (The car number refers to the number appearing on the schedule received in evidence as the receiver's Exhibit No. 3):

(1) Funds wrongfully withdrawn from the corporation's bank account    $   600.00

(2) Moneys realized upon the sale of the reclaimed floored automobiles in excess of the loans thereon:

| | | |
|---|---|---|
| Car No. | 2 | $ 125.00 |
| " " | 4 | 100.00 |
| " " | 5 | 250.00 |
| " " | 6 | 225.00 |
| " " | 7 | 183.40 |

| | | | |
|---|---|---|---:|
| " | " | 8 | 158.30 |
| " | " | 11 | 95.00 |
| " | " | 12 | 50.00 |
| " | " | 14 | 25.00 |
| " | " | 16 | 120.00 |

1,331.70

(3) Entire proceeds from the sale of the following described automobiles:

| | | | |
|---|---|---|---:|
| Car No. | 1 | | $ 1,960.50 |
| " | " | 3 | 1,900.00 |
| " | " | 9 | 690.77 |
| " | " | 10 | 525.14 |
| " | " | 17 | 1,675.00 |
| " | " | 18 | 1,675.00 |
| " | " | 19 | 1,200.00 |
| 1951 Ford Victoria | | | 1,950.00 |
| 1950 Pontiac Tudor | | | 1,450.00 |

13,026.41

(4) Proceeds from the sale of the floored automobiles:

(a) Post-war cars:

| | |
|---|---:|
| Ford, 1950, 4 door | 1,000.00 |
| Ford, 1949, Conv. | 1,000.00 |
| Ford, 1946, Club Coupe | 1,000.00 |
| Mercury, 1946 | 1,000.00 |

4,000.00

(b) 17 pre-war automobiles at 100.00

1,700.00

Total 20,658.11

A study of the voluminous record and transcript leads to the conclusion that there is substantial evidence in the case to sustain the finding of the referee that the respondent is properly chargeable with the appropriation of the items we have marked (1), (2) and (4). Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.; Order 36, General Orders in Bankruptcy, 11 U.S.C.A. following section 53. A clear preponderance of the evidence showed that when difficulties arose as to the bankrupt, which were accelerated by the fact that respondent Taylor secured the arrest on charges of grand theft of the only three responsible officers of the bankrupt other than himself, he proceeded to apply to debts owed to himself the sum of $600 in the bank and caused to be removed to his garage and parked on a side street certain automobiles which were later either sold by him or seemed to have vanished. At the time, Taylor was the vice-president and general manager of the company. Granted that he had certain rights as to items No. 3, to which we shall refer presently, he had no right to appropriate money or property to the liquidation of debts either in the form of dishonored checks or otherwise. In that respect, he was a creditor like any other creditor and could not by acting in a dual capacity, secure for himself an advantage or preference over the others. The money and property so appropriated by Taylor being the property of the bankrupt, and the bankrupt not doing any business following the middle of February, 1952, Taylor could not relieve himself of the responsibility as the possessor and holder of the property at the time of the bankruptcy by tendering his resignation to the secretary-lawyer of the company,—a resignation which was never accepted by the Directors. For there is no evidence of any meeting ever being held to act upon such resignation. Hence, at the time of bankruptcy, there was sufficient possession in the bankrupt through Taylor to satisfy the requirements as to jurisdiction required by bankruptcy law. See, Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 1924, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Gardner v. New Jersey, 1946, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504; In the Matter of Kansas City Journal-Post Co., 8 Cir., 1944, 144 F.2d 819, 823; Cline v. Kaplan, 1944, 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97; Honeyman v. Hughes, 9 Cir., 1946, 156 F.2d 27, 28–29; and see the writer's opinion In re Christ's Church of the Golden Rule, D.C. N.D.Cal.1948, 79 F.Supp. 42, 44. Taylor could not by the *fiat* of his unaccepted resignation, turn his possession and custody as vice-president and general manager of the bankrupt into his possession as controlling stockholder of Taylor Manufacturing Co.

However, the Referee was wrong in charging Taylor with the proceeds of the sale of the automobiles known as Group No. 3. The undisputed evidence is that these automobiles were covered by proper trust receipts executed to Taylor, before he became an officer of the bankrupt, under the law of California. California Civil Code, Secs. 3012–3016.16. Such trust receipts are recognized as a valid method of securing a debt. Commercial Discount Co. v. Los Angeles County, 1940, 16 Cal.2d 158, 161, 105 P.2d 115; Klett v. Security Acceptance Co., 1952, 38 Cal.2d 770, 783, 242 P.2d 873. And, under the terms of California law, upon default, Taylor was free to take possession of the cars, sell them at public or private sale and keep the proceeds. As to cars denominated 9 and 10 in 'Group 3, by the very terms of California law, the trust receipt lien attached to these cars which were received in trade for two others covered by trust receipts. California Civil Code, Sec. 3016.6. The dual capacity in which Taylor acted does not prevent the application of these principles of law to this specific property. The memorandum of the referee seems to indicate that because of Taylor's control of the bankrupt corporation and the creditor corporation, the effect of these trust receipts was nullified. I do not so interpret the law. The fact that Taylor drove a hard bargain and made the company pay him a salary of $1000 a month for each $25,000 he was to advance, in addition to six per cent interest is merely a demonstration of the fact that money gives power and that those who need it may pay an onerous price for it to the man who has it. This, however, is not sufficient to deprive even the most hardened money-lender of the value of the security which the law gives to him. It should be added that in arriving at this conclusion, the court considered the exhibits which the referee rejected at the hearing on Motion to reopen held on October 30, 1952. And the exhibits thus rejected are now placed in evidence as Respondent's exhibits. I agree with the Referee that a case once tried should not be reopened for retrial, especially after the referee has announced his decision. But in a complicated matter of this character, liberality should obtain and there should be no hesitancy on the part of the referee to reopen the case in order to allow certain documentary evidence necessary to complete the record.

Hence the ruling above made.