**TAYLOR et al. v. QUITTNER.**

**QUITTNER v. TAYLOR et al.**

**No. 13834.**

United States Court of Appeals Ninth Circuit.

June 30, 1954.

Rehearing Denied Jan. 15, 1955.

John W. Preston, Millsap & Schaumer, Los Angeles, Cal., for appellants.

Gendel & Raskoff, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and McCORMICK, District Judge.

JAMES ALGER FEE, Circuit Judge.

The bankrupt was engaged in buying and selling used automobiles. Taylor agreed to finance the operations at six per cent interest upon the deposit with the Taylor Company, his corporate personality, of title documents and the giving of trust receipts upon purchased cars. He personally was also placed on the payroll with payment of $1,000 a month for each $25,000 advanced to bankrupt. Subsequently, when he found that bankrupt was selling cars to others without accounting to the creditor company for its trust receipts, he insisted upon being and was named vice-president and manager of bankrupt. Immediately after one of the employees of bankrupt quit, Taylor hired him. In company with this employee, he clandestinely opened the bankrupt's safe at night and removed an undetermined number and kinds of documents. He caused all the other officers of the bankrupt to be arrested. He then applied on his own debts $600 taken from the bank account of bankrupt. On February 1, he removed and took into his possession all the automobiles in the lot of bankrupt, including many on which he had no trust receipt. Taylor then mailed to bankrupt a notice, which was redelivered to Taylor at his home because he had left written directions that all mail of bankrupt should be so delivered. The office of bankrupt was at that time closed, and all officers except Taylor had been arrested. He then held a private sale and purchased for $25,000 all of the automobiles upon which he had trust receipts. Subsequently, he resold these cars for higher sums generally than those stated in the respective trust receipts and at a higher gross sum than the price for which he had sold them to himself at private sale. Upon February

15, 1952, he claims to have delivered all cars upon which he did not hold trust receipts to another officer of bankrupt and thereupon resigned as an officer himself. On April 4, a petition in involuntary bankruptcy was filed against Car Leasing of America, Inc. Thereafter, upon appropriate proceedings, when it was admitted that the moneys from the sale of cars and that amount which was abstracted from the account of bankrupt was banked in the name of Taylor Company, the Referee issued a turnover order. On review, the District Court modified the order and affirmed.

Taylor has appealed from the order of the District Court on review proceedings, and a cross-appeal has been filed by the Trustee from the modifications. The cross-appeal will be dealt with first. The Referee contends that the Trial Judge was in error in modifying the turnover order by directing that the proceeds of a series of cars (Group 3) [1] upon which the record shows Taylor Company had trust receipts be credited to Taylor. The claim is that these trust receipts are not valid. Validity is a question of law upon which the District Court is empowered to rule contrary to the Referee. But it is said a question of fact was involved. The finding of the Referee that these trust receipts had been paid and were stolen from the safe of the bankrupt was clearly erroneous based upon the record as a whole and was the result of suspicion and mistrust which the attitude and conduct of Taylor had created very properly in the mind of the Referee. The latter, justifiably irked at the course of proceedings, erroneously excluded certain documents which had a direct bearing upon the exact question. The Trial Judge reversed and gave consideration to these. The excluded documents and the other evidence firmly found the position of the Trial Judge that "these automobiles were

covered by proper trust receipts executed to Taylor, before he became an officer of the bankrupt."[2] There were two cars in this list which the Referee concluded should be accounted for by Taylor. The Trial Judge points out that the record shows these were received in trade for two other cars upon which Taylor had unpaid trust receipts. As matter of law, the Court was correct.

Three points are raised by the appeal of Taylor. It is contended (1) that the Referee had no authority to issue the turnover order, (2) that the Referee and the Trial Court were wrong in refusing to permit Taylor to retain sums over the principal and interest called for upon the respective trust receipts upon these automobiles (Group 2), and (3) that the Referee and the Court were wrong in holding Taylor for the value of automobiles (Group 4) which he seized but upon none of which he had trust receipts.

The third point will be taken up first. The Referee was entirely right upon this matter, and the Trial Court affirmed. An agent who is entrusted with the possession of property never loses his fiduciary character. His possession is that of the principal. He cannot, after he has so taken the possession and converted the property to his own use, escape the violation of the trust by pointing out the chattels to some other agent of the principal and turning over possession to him. The option lies with the principal as to the manner in which the breach of trust shall be pursued. These choices of remedy are concurrent, although, of course, these must be basically consistent.

The law supports the conclusion that Taylor is liable for the return of these cars (Group 4) or their value. The fiduciary relationship of Taylor was not destroyed with reference to any of this property by his resignation.

---

1. Groups (1) to (4) are described in the opinion of the Trial Court, In re Car Leasing of America, Inc., 109 F.Supp. 642, 643–644.

2. In re Car Leasing of America, Inc. (Quittner v. Taylor), D.C., 109 F.Supp. 642, 645.

Taylor's point two is that, since the Referee and the District Judge recognized his right to take these automobiles (Group 2) on which he held trust receipts and sell them, he had also an unquestioned right to retain all the proceeds of sale to pay expenses and costs according to the terms of such trust receipts. This position has no foundation. One who takes a chattel under a trust receipt, be the provisions thereof ever so broad, acts in the capacity of a trustee toward all those who have any interest in the chattel, legal or equitable.[3] If he sells the property to himself at private sale, he does not divest himself of his fiduciary character.[4] If, before or after this, he sells to a third party, he must account to the others interested in the property, not only for the proceeds of the sale but also must show that full value was obtained and that the sale was in all respects fair. If this cannot be done, he runs the risk of losing all the proceeds.

Here the Referee correctly held that the principal should be retained by Taylor. But the latter was in a fiduciary position with reference to bankrupt when he took possession of these cars. Owing to his dual fiduciary capacity in the light of the extraordinary circumstances of the resale to himself and the fact that he got more money when the cars were sold to third parties, the Referee held that he should account for all amounts above those due on the trust receipts. This is sound upon principle and law, was affirmed by the District Judge, and is here approved.

As to certain cars (Group 3), the Trial Judge correctly held that the proven bad character, lack of veracity and misconduct did not strip Taylor of his interest in the automobiles upon which he had advanced money. Above it has been held that there is no evidence to show that the trust receipts which it held were void or illegal.

The District Judge correctly held that the control by Taylor of the bankrupt corporation and the creditor corporation did not cancel the debt or the lien. The exclusion of the proceeds of the sale of these cars up to the amount due on the trust receipts to Taylor was properly required. As to the surplus over this amount, the Trustee raises a question. It seems that, to be consistent, the same considerations which are mentioned above control. Taylor should have the amounts for which the trust receipt shows the car was pledged with interest as provided. All amounts received by him on the sale of any of these cars above this should be turned over.

The first point, that the Referee had no power to issue a turnover order because bankrupt did not have possession of the automobiles as of the date of the petition and that Taylor could not be held to return property which had been dissipated, has already been answered. Once Taylor took possession of the bankrupt property as its agent, he was bound to account for it or its proceeds and his possession was the possession of the company.

The judgment of the District Court is affirmed in all respects with the minor modification above mentioned.

3. See Wade v. Markwell & Co., 118 Cal. App.2d 410, 258 P.2d 497.

4. Neither the trust receipts here involved nor the California Civil Code gave Taylor authority to purchase these cars at his own private sale. "An entruster in possession may * * * at a public sale himself become a purchaser." Civ.Code, § 3016.2(3) (b). His fiduciary character was unimpaired by a private sale to himself.