**654**

In the Matter of Frank RICCOBONO,
Patricia Riccobono, Bankrupts.

Nos. 65723, 65724.

United States District Court
S. D. California, Central Division.

April 18, 1956.

Leslie S. Bowden, Los Angeles, Cal., for trustee.

Low & Burnside, by Howard S. Burnside, San Francisco, Cal., for respondent.

YANKWICH, Chief Judge.

Upon a voluntary petition, Frank Riccobono, the bankrupt, and his wife, Patricia Riccobono, were adjudged bankrupts on March 28, 1955. On April 11, 1955, Kyle Z. Grainger, Jr., was appointed and, at all times mentioned herein was, and still is, the trustee of the estate.

On September 29, 1955, the trustee filed an order to show cause which recited the following facts: Among "the assets belonging to the said bankrupt estate and coming into the possession of" the trustee was certain real property situated in the City of Palo Alto, Santa Clara County, California. Within four months of the filing of the petition in bankruptcy, Chester C. Wrenn (to be referred to as the "respondent") obtained a lien upon the real property by virtue of a writ of attachment issued out of the Municipal Courts of the Palo Alto-Mountain View Judicial District, Santa Clara County, California, in case No. 1060 entitled "Chester C. Wrenn, Plaintiff, vs. Frank Riccobono, Defendant". At the time of the levy of the writ of attachment the bankrupt was insolvent and the lien was void. The trustee asked that an order to show cause be issued directed to the respondent and ordering him to appear before the court to show why an order should not be made declaring the lien to be void.

The Referee, on the same day, issued an order to show cause requiring the respondent to appear on October 18, 1955. On October 12, 1955, the respondent filed a special appearance contesting the jurisdiction of the Court. He asked that the Court vacate the order to show cause and "make an order that all matters pertaining to the lien of Chester C. Wrenn, upon real property of the bankrupts in the County of Santa Clara, State of California, and pertaining to the validity of said lien and solvency of the bankrupts at the time said lien commenced March 7, 1955, in the County of Santa Clara, State of California, are beyond and without the jurisdiction of this Honorable Court and that this court does not have jurisdiction to make an order affecting the said real

property situated in the County of Santa Clara, State of California."

Attached to the motion was an affidavit by Chester S. Burnside, one of the respondent's attorneys, which stated that on March 3, 1955, an attachment was issued out of the Municipal Court of Palo Alto-Mountain View Judicial District, County of Santa Clara, California, in an action instituted therein on a promissory note and that a levy had been made upon the property described in the petition on March 7, 1955.

The affidavit also recited that the bankrupt *was solvent* at the time of the levy, that the amount of the indebtedness with interest and attorneys' fees ($1,728.88) had been filed *as a secured claim* in the present proceeding, that the lien was valid, and that the real property is outside the territorial jurisdiction of the court. It also stated, additionally, that the court and the trustee did not have actual or constructive possession of the real property which is the subject of the lien, that the transaction took place at Palo Alto and that the witnesses to the transaction resided outside the territorial jurisdiction of the bankruptcy court.

No testimony was taken at the hearing. The matter was submitted on the showing of the petition and the creditor's challenge of jurisdiction. The Referee declined to take jurisdiction and granted the motion to dismiss. In so acting, the Referee adopted the position advanced by the respondent that the court lacked jurisdiction, and that, *for convenience,* the matter should not be determined here.

■■ In this petition to review the order, we are to determine whether the Referee was right in declining jurisdiction. The problem of *convenience* of parties need not detain us. For the order of the Referee, which is before us for review, *does not* state this as a ground for granting the motion to dismiss the petition. However, as the Referee, in his certificate, has adverted to this matter as one of the factors which motivated him in ruling, to use his own language, "narrowly on the jurisdictional question", it should be stated that convenience required no such action. Convenience is a ground for transferring a case from one referee to another,[1] and from one district to another.[2] But in neither situation is the problem one of *jurisdiction.* More, the Referee could not decide the question of convenience without a hearing. He could not accept the bare statement in the affidavit of the respondent that the convenience of parties or witnesses required that the matter be made the subject of ancillary proceedings in another district when the *institution* of the bankruptcy in this district *stood unchallenged.*

So we are back to the sole ground for dismissal of the petition set forth in the Referee's order:

> "Ordered, that the motion of said respondent Chester C. Wrenn, be, and it is hereby, granted on the ground that this court has no jurisdiction of the subject matter set forth in the petition of the trustee on file herein."

The Referee was wrong in reaching this conclusion. The error was induced by a misinterpretation of the meaning of the 1938 amendment to Clause 20, Section 2, sub. a, of the Bankruptcy Act.[3] The clause in its entirety reads:

> "(20) Exercise ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy. *Provided, however,* That the jurisdiction of the ancillary court over a bankrupt's property which it takes into its custody shall not extend beyond preserving such

---

1. Bankruptcy Act, § 22, sub. b, 11 U.S. C.A. § 45, sub. b.

2. General Order 6; and see, Bankruptcy Act, § 2, sub. a (19), 11 U.S.C.A. § 11, sub. a (19); Bankruptcy Act, § 32, 11 U.S.C.A. § 55. And see, 28 U.S.C.A. § 1404.

3. 11 U.S.C.A. § 11, sub. a (20).

property and, where necessary, conducting the business of the bankrupt, and reducing the property to money, paying therefrom such liens as the court shall find valid and the expenses of ancillary administration, and transmitting the property or its proceeds to the court of primary jurisdiction; and * * *." [4]

■ The first paragraph of the provision has been in the Act since 1910. The proviso was added by the Act of 1938. The draftsmen of the Act stated that its object was *not to limit* the jurisdiction of the court where the bankruptcy was commenced originally, but that it had reference to proceedings "in other districts *in aid of* the district court of original jurisdiction." [5] (Emphasis added.)

What was intended to vest the ancillary court with *additional powers to enable it to aid* the court of original jurisdiction has been applied in this case as a *restriction* upon the power which the bankruptcy court has *always had* to deal summarily with claimed liens on property which is in the actual or constructive possession of the trustee, *whether situated within the district of not.*[6] The following declarations from a few leading cases show how broad a sanction the exercise of this power has had:

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' Galbraith v. Vallely, 256 U.S. 46, 50, 41 S.Ct. 415, 416, 65 L.Ed. 823; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. *But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction.* Harrison v. Chamberlin, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897. *It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial.*" [7] (Emphasis added.)

"The various provisions of the Act reflect a well coordinated general plan for the accomplishment of equal distribution of the bankrupt's property amongst the bankrupt's creditors. The trustee, as the hand of the court, collects the assets, protects them, and brings them before the court for final distribution; he is trustee for all who have interests, according to those interests. In re Ducker, 6 Cir., 134 F. 43. Once a petition has been filed, *the court's exclusive and paramount jurisdiction extends to all the bankrupt's property, except as otherwise provided in the Act, whether within or without the district* where the proceedings are commenced. Issacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645." [8]

---

4. 11 U.S.C.A. § 11, sub. a (20).

5. Analysis of H.R. 12889, 7th Congress, 2nd Session, 1936, as quoted in 1 Collier on Bankruptcy, 14th Ed., § 2.73, pp. 290–293.

6. Cline v. Kaplan, 1944, 323 U.S. 97, 98, 65 S.Ct. 155, 89 L.Ed. 97; Chandler v. Perry, 5 Cir., 1934, 74 F.2d 371, 372–373; In re Meiselman, 2 Cir., 1939, 105 F.2d 995, 996–997; In re Lustron Corp., 7 Cir., 1950, 184 F.2d 789; Abraham v. Shinberg, 1951, 88 U.S.App.D.C. 306, 190 F.2d 595, 596–597; Thompson v. Dachner, 9 Cir., 1954, 214 F.2d 922, 924; National Oats Co. v. Long, 5 Cir., 1955, 219 F.2d 373, 374, on rehearing National Oats Co. v. Long, 5 Cir., 1955, 220 F.2d 745.

7. Cline v. Kaplan, 1944, 323 U.S. 97, 98–99, 65 S.Ct. 155, 156, 89 L.Ed. 97.

8. In re Lustron Corp., 7 Cir., 1950, 184 F.2d 789, 794.

# 658

(Emphasis added.)

"As a court of bankruptcy, the district court had exclusive jurisdiction of the debtor and its property, *wherever located* at the time in question." [9] (Emphasis added.)

█ So it is evident that the court had jurisdiction over the real property of the bankrupt, which was a part of his estate, although it was located in Santa Clara County, which is in another California federal court district.

█ And the validity of the lien of an attachment could be inquired into *summarily*.[10] The trustee's petition alleged the invalidity of the lien of attachment involved here. The respondent's affidavit asserted the contrary, claiming solvency for the bankrupt at the time of the levy. Even if we assume that this was *the assertion of an adverse claim*, it was the duty of the Referee to hold a *full* hearing and determine whether there was such validity to the claim as to warrant relegating the trustee to a plenary action or ancillary proceeding in another district.

██ As said by the Court of Appeals for the Second Circuit:

"It is now settled that if there is a real and substantial controversy of law or fact as to property held adversely to a bankrupt—'a contested matter of right, involving some fair doubt and reasonable room for controversy'—the bankruptcy court is 'without jurisdiction' to adjudicate the matter, but the trustee must have resort to a plenary suit. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897, quoting

Board of Education v. Leary, 8 Cir., 236 F. 521, 525; In re Quan Weing et al., 2 Cir., 104 F.2d 112. *But the mere assertion of an adverse claim is not enough, and the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable.*" [11] (Emphasis added.)

██ Whether there was actual or constructive possession was also a question of fact which required a hearing and findings.[12] Nor could the Referee accept the statement in the respondent's affidavit as to solvency in view of the contrary allegations of the petition and the fact that the levy was made on *March 7, 1955*, exactly *twenty-one* days before the adjudication on *March 28, 1955*. It was the duty of the Referee to hear testimony and determine the truth of this allegation. For the lien was admittedly secured within the prohibited four months' period and *only solvency* could save it.[13]

It follows that in declining jurisdiction the Referee abdicated the function of a court of original jurisdiction which concededly had jurisdiction of the bankrupt estate, a jurisdiction which was not challenged by the respondent or anyone else.[14] Indeed, the respondent recognized it by submitting proof of a secured claim, based on the attachment which the trustee challenged in the proceeding under review.

█ A secured creditor or lien claimant *need not* present his claim to the bankrupt estate.[15] He may rely on the security. When he fails to do so, he makes a demand against the estate and

9. National Oats Co. v. Long 5 Cir., 1955, 219 F.2d 373, 374.

10. In re Rand Mining Co., D.C.Cal.1947, 71 F.Supp. 724, 729–730. The writer's ruling in the above case has the approval of the Court of Appeals for the 2nd Circuit in Blue Ridge Lumber Products v. Nelson, 2 Cir., 1954, 213 F.2d 451, 453.

11. In re Meiselman, 1939, 2 Cir., 105 F.2d 995, 997.

12. In re Christ's Church of the Golden Rule, D.C.N.D.Cal.1948, 79 F.Supp. 42

(Ebbert Claim); Ibid. at page 45 (Papenhausen Claim); Ibid. at page 46 (Glenn Claim).

13. Bankruptcy Act, § 67, a sub. 1, 11 U.S. C.A. § 107, sub. a (1); In re Rand Mining Co., supra, Note 10, 71 F.Supp. at page 730.

14. General Order § 6.

15. Bankruptcy Act, § 57, subs. e, h, n, 11 U.S.C.A. § 93, subs. e, h, n.

gives notice that he intends to hold it liable for such portion of his indebtedness as may not be satisfied by the liquidation of the security.[16] But

> " * * * after the jurisdiction of the bankruptcy court has attached to the security, the lien claimant may assert his claim to such security or to the proceeds derived from the sale thereof, *only in the bankruptcy court.*"[17] (Emphasis added.)

At the time of the adjudication here the lien of attachment had not been merged into the lien of a judgment.[18] Bankruptcy has intervened and no judgment has been rendered. The proof of claim, after reciting the execution of a promissory note under which the claim arose, the amount due thereon on account of principal, interest and the attorney's fees, the amount of which was unliquidated because of note provided merely for the payment of "court costs and attorney's fees", stated:

> "That this claim is filed as a secured claim and claimant is a secured creditor in that claimant has caused an attachment to be levied against the real property of said bankrupts said real property being situated in the City of Palo Alto, County of Santa Clara, State of California, and the said attachment having been levied prior to the filing of the bankrupt's petitions in bankruptcy at a time when the said bankrupts, and each of them, were solvent."

 In passing on the claim the bankruptcy court was required to determine the amount of it which included the reasonableness of the attorney's fees. Aware of the fact that the attachment lien *might be void*, and that the Bankruptcy Act specifically provides that the claims of creditors who have acquired void or voidable liens "shall not be allowed"[19] unless the liens are surrendered, the claimant asserted under oath and put in issue the validity of the lien by alleging that it was filed *prior* to the bankruptcy and *when* the bankrupt was solvent. As already noted, it was only twenty-one days *prior* and *within* the four months period. So that, aside from the general principles adverted to, which give the bankruptcy court jurisdiction to determine the validity of such lien, even if the property was situated in another district,[20] we have the incongruous situation of a secured debtor submitting his alleged secured claim based on lien of attachment to the court, which *he was not required* to do, asserting, under oath, that it *was a valid lien* and yet insisting,—when the trustee resorts to the legally recognized method of adjudicating its validity before the bankruptcy court,[21]—that the Court had no jurisdiction to determine the matter.

 In what precedes we have shown that not only did the court have jurisdiction, but also that the failure to exercise it was an abdication of its *original* jurisdiction,[22] which was contrary to established legal principles and to the equities in the case.

The order of the Referee is reversed.

---

16. Bankruptcy Act, § 57, subs. d, e. f, g, 11 U.S.C.A. § 93, subs. d, e, f, g.

17. De Laney v. City and County of Denver, 10 Cir., 1950, 185 F.2d 246, 251.

18. California Code of Civil Procedure, §§ 542a, 674. The attachment lien transferred no title to the property. California Civil Code, § 2888.

19. Bankruptcy Act, § 57, sub. g, 11 U.S. C.A. § 93, sub. g.

20. 3 Collier on Bankruptcy, 14th Ed., § 57.07, pp. 152, 158; 8 C.J.S., Bankruptcy, § 431; Butterfield v. Woodman, 1 Cir., 1915, 223 F. 956, 961–962; Fish v. East, 1940, 10 Cir., 114 F.2d 177, 201; United States National Bank v. Chase National Bank, 1947, 331 U.S. 28, 33–34, 67 S.Ct. 1041, 91 L.Ed. 1320; De Laney v. City and County of Denver, 10 Cir., 1950, 185 F.2d 246, 250–251.

21. See cases in Notes 6, 7, 8 and 9.

22. De Laney v. City and County of Denver, supra, Note 17.