PETER PAN SEAFOODS, INC., a Washington Corporation, Plaintiff,

and

Lake Union Drydock Company and Duwamish Shipyard, Inc., Plaintiff-Intervenors,

v.

M/V POLAR VIKING, her engines, boilers, machinery, tackle, apparel, furniture and appurtenances, Defendant,

Red Circle Transport, Claimant.

No. C76–810B.

United States District Court, W. D. Washington.

Dec. 20, 1977.

William J. Glueck, of Riddell, Williams, Ivie, Bullitt & Walkinshaw, Seattle, Wash., for Peter Pan Seafoods, Inc., a Washington corporation, plaintiff.

Douglas M. Fryer, of Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for Lake Union Drydock Co. ·and Duwamish Shipyard, Inc., plaintiff-intervenors.

James H. Bauer of Detels, Droper & Marinkovich, Seattle, Wash., for Red Circle Transport, claimant.

## ORDER DENYING MOTION TO DISMISS

BEEKS, Senior District Judge.

Red Circle Transport, as claimant of the POLAR VIKING, moves to dismiss this action for lack of subject matter jurisdiction. It contends that because Northland Marine Lines (NML) filed a petition for a Chapter XI arrangement before this action was filed, the jurisdiction of the bankruptcy court became exclusive with respect to any and all disputes involving the POLAR VIKING. Thus, according to claimant, plaintiffs must seek relief from the bankruptcy court on their maritime lien claims since this Court is without power to hear the action. Although this contention may have merit in situations not here presented, the motion must be denied. The facts do not support Red Circle. When it successfully reclaimed possession of the POLAR VIKING, any exclusive jurisdiction of the bankruptcy court terminated.

The chronology of events is determinative. The POLAR VIKING was under charter to Red Circle from its owner Midland Enterprises (not involved herein). Red Circle subchartered the POLAR VIKING to NML on December 10, 1975 for a period of one year. While in the possession of NML, certain services were rendered to the vessel by plaintiffs Peter Pan Seafood, Lake Union Drydock, and Duwamish Shipyard giving rise to the maritime liens which are the subject of this action, although the merits thereof are not presently at issue.

Thereafter, on October 27, 1976, NML filed a petition for an arrangement pursuant to Chapter XI. Five days later on November 1, 1976, Red Circle filed a complaint with the bankruptcy court to reclaim the vessel. On November 11 the bankrupt-

cy court ordered NML to return POLAR VIKING to Red Circle by December 15, 1976, the termination date of the subcharter. Peter Pan Seafood filed its complaint in rem against the vessel on November 19, 1976.

 Red Circle correctly contends that upon the filing of a petition in bankruptcy, all property in the possession of the alleged debtor, whether actual or constructive, passes at once into the custody of the bankruptcy court which has jurisdiction to determine all claims in or to that property. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *see Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *City of Long Beach v. Metcalf*, 103 F.2d 483 (9th Cir. 1939). Since such jurisdiction depends upon the debtor's title or possession, *Slenderella Systems of Berkeley, Inc. v. Pacific Tel. & Tel. Co.*, 286 F.2d 488, 489–90 (2nd Cir. 1961), it follows that jurisdiction terminated when Red Circle regained actual possession during December, 1976, vessel "ownership" being determined pursuant to the reclamation proceeding. "The rule is well settled that the property of a third person in the possession of the bankrupt, where proper proof of valid title is shown by the claimant, should not be included in the assets of the bankrupt's estate, but should be restored to the claimant." 4A Collier on Bankruptcy, ¶ 70.39 at 467 (14th ed.).

The central problem arises from the fact that the complaint in admiralty was filed after the bankruptcy court ordered the return of the POLAR VIKING but before actual possession passed. The motion of Red Circle thus turns on whether this admiralty action is a nullity because it was filed before the jurisdiction of the bankruptcy court terminated. This question must be answered in the negative. In the circumstances here presented, the POLAR VIKING was subject to the concurrent jurisdictions of both admiralty and bankruptcy.

In recent years courts have taken the practical approach to the question of jurisdictional conflict between admiralty and bankruptcy. This approach is based on the realization that "a federal district court is a federal district court and has whatever powers it has whether the proceeding before it is captioned 'in bankruptcy' or 'in admiralty'." Gilmore & Black, The Law of Admiralty 806 (2nd ed. 1975). Thus courts have guided their conduct by the principles of comity and cooperation where questions of this type arise. *See, e. g., In re Wonderbowl, Inc.*, 456 F.2d 954 (9th Cir. 1972). Where the conflict of jurisdictions is between different judicial districts, courts have refrained from interfering with the court which first gained jurisdiction. *See* 1 Collier on Bankruptcy, ¶ 2.10 at 180 (14th ed.), Gilmore & Black, *supra*, at 806–807. This is so although Congress did not confer admiralty jurisdiction upon the bankruptcy courts. *Id.* Furthermore, in disposing of this matter, it must be remembered that district courts have original jurisdiction over all matters in bankruptcy and admiralty, 28 U.S.C. §§ 1333, 1334, and that both matters are now pending in this, the same district. Accordingly, disposition must be viewed pragmatically.

 The pragmatic approach dictates that this motion be denied. The issue of vessel "ownership" was properly determined before the bankruptcy court. Once it decided on November 10 that the POLAR VIKING was to be returned to Red Circle, the interests of the receiver in the vessel were essentially at an end; it was apparent that the vessel would not be a part of the debtor's estate. *In re Universal Medical Services, Inc.*, 460 F.2d 524, 526 (3rd Cir. 1972); 4A Collier on Bankruptcy, ¶ 70.39 at 467 (14th ed.). In light of the above, the filing of the admiralty complaint did not interfere with the jurisdiction of the bankruptcy court, and this action became collateral to the bankruptcy action. Bankruptcy courts do not take jurisdiction of collateral disputes between third parties unless their settlement is a necessary step to administer completely the estate of the bankrupt. *First State Bank & Trust v. Sand Springs State Bank*, 528 F.2d 350, 353 (10th Cir. 1976); *Baker and Taylor Drilling Co. v. Stafford*, 369 F.2d 551, 556 (9th Cir. 1966).

■ The entry of the order of November 10, therefore, terminated the *exclusive* jurisdiction of the bankruptcy court. The Bankruptcy Act seeks to maintain exclusive jurisdiction of the bankruptcy court even to the extent of limiting powers of other federal courts *except* with respect to adverse claims of third parties to property not in possession of the trustee. *Meister v. Heft*, 334 F.Supp. 31, 32 (E.D.N.Y.1970), *aff'd*, 448 F.2d 784 (2nd Cir. 1971) (emphasis added). While the POLAR VIKING technically remained subject to bankruptcy jurisdiction until possession passed, the vessel became subject to admiralty jurisdiction upon the filing of the complaint in rem. Thus, during the time period in question, concurrent jurisdiction existed over the POLAR VIKING both in bankruptcy and in admiralty.

ACCORDINGLY, the admiralty complaint is not a nullity and the present action can be maintained. Motion denied.